UNITED STATES

v.

**Henry C. RASCOE, 266 77 2288, Private (E–1), U.S. Marine Corps.**

**NMCM 88 0566.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 15 July 1987.

Decided 15 May 1990.

---

Lt. Teresa A. McPalmer, JAGC, USNR, Appellate Defense Counsel.

Maj. R.H. Zales, USMC, Appellate Government Counsel.

Before BYRNE, ALBERTSON and JONES, JJ.

ALBERTSON, Judge:

Appellant was convicted, pursuant to his pleas, by a general court-martial for violating Article 121 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. He was found guilty of nine specifications of larceny for altering and presenting nine of his U.S. Government paychecks and obtaining $5,200.00 in excess of that authorized. He was sentenced by a court composed of officer members to a dishonorable discharge, 6 months confinement, forfeiture of all pay and allowances, and payment of a fine of $6,000.00 or additional confinement for 5 years if the fine was not paid. The convening authority approved the sentence as adjudged.

After the convening authority approved the sentence, and upon petition of appellant, a hearing was held in accordance with Rule for Courts–Martial (R.C.M.) 1113(d)(3), Manual for Courts–Martial (MCM), United States, 1984, to determine appellant's ability to pay the fine. The hearing officer found appellant was indigent and unable to pay the fine, but then recommended that the convening authority order the additional 5 years confinement in lieu of payment of the fine executed. The staff judge advocate also advised the convening authority of certain facts and, based on those additional facts, recommended to the convening authority that he execute the confinement

in lieu of payment of the $6,000.00. The convening authority adopted the indigence finding and recommendations of the hearing officer and staff judge advocate and, in accordance with R.C.M. 1113(d)(3), ordered executed that portion of the sentence extending appellant's confinement for an additional 5 years in lieu of payment of the fine, but suspended the execution of that confinement in excess of 18 months for 12 months from the date of trial.

Appellant assigns the following issue as error:

THE TOTAL SENTENCE TO CONFINEMENT, INCLUDING CONFINEMENT IN LIEU OF THE FINE, SHOULD BE LIMITED TO THE MAXIMUM SENTENCE TO CONFINEMENT PROVIDED FOR IN THE PRETRIAL AGREEMENT BECAUSE APPELLANT WAS NOT MADE AWARE OF THE FINE PROVISION OF THE PRETRIAL AGREEMENT UNTIL TRIAL.

He cites in support of his position *United States v. Walker,* 26 M.J. 813 (ACMR 1988). We will resolve the issue by addressing it in three parts: (1) Were the appellant's pleas provident since he was unaware of the full ramifications of the monetary punishment provisions of his pretrial agreement, including the provision for additional confinement in lieu of payment of the fine until the military judge conducted the pretrial agreement inquiry in accordance with *United States v. Green,* 1 M.J. 453 (C.M.A.1976)?[1] (2) Did the convening authority act legally when he approved the adjudged sentence, including the confinement in lieu of payment of the fine, when that period of confinement, in combination with the adjudged confinement, was in excess of the total confinement authorized by the pretrial agreement? (3) Was the convening authority's supplementary action ordering the execution of confinement in lieu of payment of the adjudged fine lawful? We answer the first two questions in the affirmative, but the third in the negative.

1. We will variously refer to the confinement in lieu of payment of the fine provision as the fine enforcement provision or contingent confinement. We will also use the term "committed

### I. Providency of the Appellant's Pleas

Appellant contends and we agree that it is apparent from the discussion during the providence inquiry that the appellant did not fully understand the nature of a fine enforcement provision nor was he fully aware of the consequences of the forfeitures/fine provision in the pretrial agreement. He also had not given any thought, during his negotiation for the pretrial agreement, to the possibility that the convening authority could approve confinement in addition to the confinement adjudged if he failed to pay the fine adjudged. Even his defense counsel was unaware that the court could sentence an enlisted person to a fine amounting to more than the enlisted member's pay. Additionally we note that at this plea inquiry stage, defense counsel and the appellant admitted to the military judge that it was their understanding that since the appellant was in a no-pay status, the forfeiture and fine provision of the pretrial agreement was ineffectual because appellant could not forfeit any pay nor pay any fine. Upon further discussion, the military judge called a recess to give the trial counsel the opportunity to contact the convening authority to determine if his understanding was the same as that of the defense. The trial counsel thereafter informed the military judge that the defense understanding of the forfeiture and fine provision was not the same as that of the convening authority and that the convening authority adhered to his original understanding that the appellant could still be adjudged forfeitures and a fine that could be approved and ordered executed despite his no-pay status. The military judge advised the appellant of his option either to plead not guilty and forego the protection of the pretrial agreement or to plead guilty and defer to the convening authority's interpretation of the forfeiture and fine provision of the pretrial agreement. The military judge was careful to advise appellant to exercise caution in making his decision:

fine" which means one that requires the defendant/accused to be confined until the fine is paid.

But actually there are two distinct decisions: You going [sic] to accept and make that part of the agreement and have it binding upon you; and are you going to plead guilty or not guilty regardless of the agreement, in either event? Because remember, now, when you pled earlier *you did it with a significant misunderstanding as to the sentence max that you could receive.* (Emphasis added.) [2]

Appellant stated he desired to continue to plead guilty and accepted the convening authority's interpretation of the pretrial agreement. Although the military judge identified for appellant the fine enforcement provision in paragraph 2 of the pretrial agreement and the lack of limitations expressed in Part 4 of the Maximum Sentence Appendix during his discussion with appellant about the maximum sentence authorized, he gave appellant no detailed advice or explanation as to the practical application of that enforcement provision as he did later during the pretrial agreement inquiry. During the pretrial agreement inquiry, the following is recorded:

MJ: ... Now paragraph two says that if part of this maximum—I'm going to read the last couple of sentences—"shall expressly include any limitations, if any, upon enforcement provisions regarding any adjudged fine. Any applicable punishment not addressed in the sentencing portion of this agreement shall signify that such punishment may be approved by the convening authority." The sentence limitation does not contain any restrictions on the enforcement provisions of a fine.

Now, the convening authority or the court can adjudge a fine. And also, in its discretion, can say that if you do not pay the fine, that you be confined for a period of time that they determine until the fine is paid, basically.

Now, by law the only limitation on that enforcement provision confinement [sic] is that the confinement adjudged separately as part of a sentence and the confinement adjudged as an enforcement provision, the sum cannot exceed the maximum permissible period of confinement, which is in this case 45 years. Do you follow so far?

ACCUSED: Yes, sir.

MJ: Strict [sic] by the terms, my understanding of these [sic] terms of this agreement [sic] it could be interpreted that suspending confinement in excess of one year and a day is for the period there in confinement. But if the court could adjudge a fine, an enforcement provision, that that also can be approved. And that if you do not pay—as an example: Court sentences you to two years and a fine, and says if you don't pay the fine you do two years. Do you follow?

ACCUSED: Yes, sir.

MJ: And then according to this agreement, the court would suspend or the convening authority suspends over a year and-a-half or a year and one day confinement and approves the rest of the sentence, you then fail to pay the fine, enforcement provision goes into effect, and you do three years and one day of confinement. Do you understand?

ACCUSED: Yes, sir.

MJ: Now is that your understanding of what the convening authority could approve?

ACCUSED: Yes, sir, it is.

The military judge then explained that he wanted to make sure the accused understood that the enforcement provision of an adjudged fine was separate from any confinement provision of the pretrial agreement and that, as he interpreted the agreement as a whole, any fine enforcement provision that entailed confinement could be approved and executed in addition to

**2.** We do not address the issue of whether the military judge *sua sponte* should have offered appellant a continuance to try renegotiating with the convening authority rather than explain appellant's situation as a "take it or leave it" proposition. Our reading of the record as a whole leaves us with the distinct impression that the military judge was very solicitous of the appellant's desires and interests and discerned from the appellant and his counsel that they did not want to renegotiate. We found no lack of judicial impartiality that would suggest the military judge was favoring the convening authority's position.

any adjudged confinement regardless of the limits placed upon confinement by the pretrial agreement. Both the accused and trial defense counsel stated they understood and agreed to that interpretation. The military judge also told the accused that as he interpreted the pretrial agreement, the convening authority could approve the sentence as adjudged. Again, both the accused and his counsel agreed with that interpretation. On the face of the record, then, we find that the appellant knowingly and voluntarily entered a plea of guilty based upon the terms of the pretrial agreement, despite the fact that prior to trial he was unaware of the full consequences of the provisions of the pretrial agreement. *See United States v. Hodges,* 22 M.J. 260 (C.M.A.1986); *United States v. Edwards,* 20 M.J. 439 (C.M.A.1985).

## II. Was the Convening Authority's Action Approving the Sentence Adjudged Legal?

The fact that appellant fully understood the provisions of the pretrial agreement, however, does not complete our examination of the pretrial agreement inquiry. Despite the appellant's full understanding and knowing acceptance of the provisions of the pretrial agreement, his understanding and acceptance was based upon the military judge's mischaracterization of the fine enforcement provision as punishment.[3]

### A. Nature and Scope of a Fine Enforcement Provision

That portion of appellant's sentence that is in question was announced by the court as: "to pay the United States a fine of $6000 dollars, and to serve confinement of five years if the fine is not paid." R.C.M. 1003(b)(3) authorizes confinement in lieu of payment of an adjudged fine in these terms:

In order to enforce collection, a fine may be accompanied by a provision in the sentence that, in the event the fine is not paid, the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired. The total period of confinement so adjudged shall not exceed the jurisdictional limitations of the court-martial.

R.C.M. 1003(b)(3) appears on its face to provide for a fixed period of confinement set by the court to become substitute punishment for the adjudged fine if the fine is not paid. But, a fine enforcement provision is not punishment. *United States v. DeAngelis,* 3 U.S.C.M.A. 298, 12 C.M.R. 54 (1953); *United States v. Sarae,* 9 C.M.R. 633 (AFBR 1953); 2 Digest of Opinions of the Judge Advocates General of the Armed Forces 823 (1953); *United States v. Ridgewood Garment Co.,* 44 F.Supp. 435 (E.D.N.Y.1942). The provision when read in conjunction with R.C.M. 1113(d)(3) requires the accused to be notified that if he fails to pay the adjudged fine he risks confinement. The former appears to provide for automatic transformation of the fine into confinement as punishment while the latter appears to limit that automatic transformation until he is afforded the due process of law that might prevent his imprisonment if he invokes it. *See United States v. Miller* 588 F.2d 1256, 1264 (9th Cir.1978); *Ridgewood Garment Co.,* 44 F.Supp. 435, 436 (E.D.N.Y.1942). What exactly, then, does R.C.M. 1003(b)(3) authorize?

The fine enforcement provision authorized by R.C.M. 1003(b)(3) is analogous to the committed fine used by the federal courts before 1987. *See United States v. Studley,* 874 F.2d 817 (10th Cir.1989) (Memorandum); *United States v. Estrada*

---

**3.** Fines and fine enforcement provisions are matters that are properly included as terms in pretrial agreements. R.C.M. 1003(b)(3) permits enforcement of the collection of an adjudged fine if that fine is "accompanied by a provision in the sentence that in the event the fine is not paid, the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired." A fine differs from forfeitures because, instead of depriving an accused of all or part of his pay, it is in the nature of a judgment making him pecuniarily liable to the United States. Also, unlike forfeitures, a fine is due immediately upon the order of execution of the sentence by the convening authority. *Discussion,* R.C.M. 1003(b)(7); *United States v. Cuen,* 9 U.S.C.M.A. 332, 339, 26 C.M.R. 112, 119 (1958).

*de Castillo*, 549 F.2d 583, 585 (9th Cir.1976) (Hufstedler, J., concurring specially); *Williams v. Illinois.*[4] Prior to that time and at the time of the promulgation of the 1984 Manual for Courts–Martial, the civilian remedy for failure of a defendant to pay a fine because he refused was for the sentencing court to authorize, prospectively, additional confinement until the fine was paid. The civilian commitment to confinement to serve the contingent confinement adjudged or until the fine was paid was an effectuation of the fine enforcement provision ordered by the court for willful refusal to pay and was an action taken for contumacious conduct rather than as the imposition of punishment for the offense of which the defendant had been convicted. The civilian defendant remained liable for payment of the fine.

Traditionally the court-martial also had such prospective authority. *See DeAngelis*, 3 U.S.C.M.A. 298, 12 C.M.R. 54 (1953); *United States v. Garcia*, 5 U.S.C.M.A. 88, 17 C.M.R. 88 (1954). In fact, paragraph 126 h, Manual for Courts–Martial, 1969 (Rev.), the predecessor to R.C.M. 1003(b)(3), finds its historical basis in civilian procedure, particularly federal statutes. *See* Winthrop, *Military Law and Precedents*, 420 (2d Edition 1920). In 1949 the Manual for Courts–Martial, U.S. Army, paragraph 116(g) provided: "In order to enforce collection, a fine is usually accompanied in the sentence by a provision that the person fined shall be imprisoned until the fine is paid or until a fixed portion of time considered as an equivalent punishment has expired." The 1951 Manual for Courts–Martial provided at paragraph 126h(3): "In order to enforce collection, a fine is usually accompanied by a provision in the sentence that, in the event the fine is not paid, the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired." The fine enforcement provision has remained the same through R.C.M.

1003(b)(3). The Army's "imprisoned until the fine is paid" language has not been included in any of the Manual provisions implementing the UCMJ. Despite the omission of the "until paid" language, it has been acknowledged that the military provision is "no different from similar provisions of statutes in civilian jurisdictions." 2 Dig.Ops. at 823. As recently as 1980, the fine enforcement provision has been considered a contingent confinement (committed fine) provision that authorizes confinement of an accused until he pays the fine. *See United States v. Knabe*, 10 M.J. 607 (AFCMR 1980), *pet. denied* 14 M.J. 205 (1982); Birnbaum, "Confinement for Non-Payment of Fines," 9 A.F.J.A.G.Rptr. 7 (February 1980). The federal statutes dealing with the committed fine, prior to 1987 and both during the drafting stages of the 1984 Manual for Courts–Martial and at the time of its promulgation, did distinguish defendants with the ability to pay but who willfully refused from those defendants who did not pay because they did not have the ability to do so because of indigency. Once the civilian court adjudged a sentence that included a committed fine, the administrative offices of the court enforced the committed fine upon a defendant's willful refusal to pay the fine by issuance of a warrant of commitment. Such a warrant was valid as long as it merely reiterated the sentence of the court. *Hill v. United States*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936). It also appears that the contingent confinement could take effect without a warrant of commitment based solely upon the judgment of the court that provided the contingent confinement. In other words, the contingent confinement was self-executing in the event the defendant did not pay the adjudged fine. *Id.*

If a civilian defendant did not pay because he was indigent, however, he applied to a magistrate or the warden of the institution in which he was incarcerated for discharge. 18 U.S.C. § 3569. *See* Win-

---

**4.** This opinion does not address the present legality of transforming the fine enforcement provision into equivalent punishment of confinement as an act of commutation before or after

Article 60 action has been taken in cases not involving indigency. *See Waller v. Swift*, 30 M.J. 139 (C.M.A.1990); *United States v. Cuen*, 9 U.S.C.M.A. 119, 26 C.M.R. 112 (1958).

throp at 420 n. 74; *Grier v. Kennan* 64 F.2d 605 (8th Cir.1933) (interpreting 18 U.S. C.A. § 641); 18 U.S.C. § 3569 (successor to 18 U.S.C. § 641). No similar procedure was found in the military justice system, however, until implementation of Rule for Court–Martial 1113(d)(3).[5]

We conclude that R.C.M. 1003(b)(3) is the tool to enforce collection of the fine that the court-martial sentencing authority gives the Government at the time it adjudges a fine. *De Angelis*, 12 C.M.R. at 55. Unless the court-martial includes such a fine enforcement provision in its sentence, no tool is provided the Government to enforce its collection, and in effect, the fine is enforceable only by moral suasion. *United States v. Carmichael*, 27 M.J. 757 (AFCMR 1988); *see Hill v. United States*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936). It therefore provides prospective authority for dealing with contumacious conduct.

The fact that the fine enforcement provision is not punishment and is primarily a tool used to enforce collection of the fine does not detract from the fact that it can subsequently, under certain conditions, be transformed into punishment under R.C.M. 1113(d)(3). That transformed punishment becomes the substitute for the fine, and, the fine is thereby discharged at the time an accused has served the substituted punishment.[6] The fine enforcement provision as envisioned by R.C.M. 1003(b)(3) involves a specified period of confinement that is adjudged by the court-members to be equivalent to the fine. It authorizes the contigent confinement of an accused or the retention of an accused serving an adjudged confinement beyond the normal release date of his adjudged confinement based upon his failure to pay the adjudged fine immediately. An accused who fails to pay his adjudged fine when it becomes due and payable, *i.e.*, at the time of the convening authority's action, subjects himself to a loss of liberty which could be substantial and, thus, he must understand the full potential for that additional loss of liberty before a court can find that he voluntarily and knowingly entered into the pretrial agreement.

**B. Mischaracterization or Misadvice?**

In this case the military judge characterized the fine enforcement provision and its concommitant potential loss of liberty as punishment, in the form of absolute, non-contingent, additional confinement. He did not explain to appellant that its primary purpose was as a tool to be used by the Government to ensure collection of the fine, and that if he willfully refused to pay the fine, he would be confined until he paid the fine but be confined for no more than 5 years, the fine still being due and payable at the end of those 5 years. Nor did the military judge explain that if he could not pay the fine, he could request the opportunity to be heard so that he could explain why he did not or could not pay and if indigency was the reason for his non-payment, the ramifications of that status, *i.e.*,

---

5. Even now, however, the specific authority to whom such application for discharge or mitigation is submitted is vague. (*See* Part III discussion *infra*.)

6. Because of our present interpretation of the purpose of a committed fine, we believe the fine of an accused confined for contumacious conduct is not discharged regardless of how much confinement he serves; nor is an indigent accused's fine discharged if the fine enforcement provision is *not* transformed into punishment. *Vitagliano v. United States*, 601 F.2d 73 (2nd Cir.1979), *cert. denied*, 444 U.S. 1085, 100 S.Ct. 1043, 62 L.Ed.2d 771 (1980); *United States v. Welborn*, 495 F.Supp 833 (1980); *McMeekin v. State*, 48 Ga. 335 (1873); *Berry v. Shehan*, 87 Ky. 434, 9 S.W. 286 (1888); *see United States v. Levy*, 865 F.2d 551, 561 n. 8 (3rd Cir.1989); *United States v. Estrada de Castillo*, 549 F.2d 583, 586 (9th Cir.1977) (Hufstedler, J. concurring). We leave for future decision, however, the validity of this dictum for we recognize that the phrase in R.C.M. 1003(b)(3) "in addition to any period *considered an equivalent punishment to the fine has expired*" could also mean either that the accused's fine is entirely discharged, if he does, in fact, serve the maximum of the additional fixed period of confinement prescribed by the court-martial that adjudged his sentence, as approved and ordered executed by the convening authority, or that he is entitled, at least, to some credit for time spent in confinement as a result of the execution of the fine enforcement provision. *See Wade v. Carsley*, 433 F.2d 68, 70 (5th Cir.1970); *The Tokai Maru*, 4 Alaska 322 (1911); *Ex Parte Kelly*, 28 Cal. 414 (1865); *Petelin v. Kennedy*, 29 Mont. 466, 75 P. 82 (1904).

the fine enforcement provision could, if certain conditions were met, be transformed into the punishment of maximum confinement of 5 years with the fine discharged at the end of that 5 years. Thus, if the appellant believed that the enforcement provision was punishment regardless of his financial status rather than a tool for collection of the fine that could only be transformed into the punishment of confinement under certain circumstances, he may have understood erroneously that the transformation was automatic regardless of his financial status at the time the fine became due and payable. Whether we can find that an accused voluntarily and knowingly accepted a pretrial agreement depends upon how the military judge explained the provisions, and such an explanation, in turn, depends upon the accuracy of his characterization of those provisions. *See United States v. Edwards*, 20 M.J. 439 (C.M.A.1985); *United States v. Partin*, 7 M.J. 409 (C.M.A.1979); *cf. United States v. King*, 3 M.J. 458 (C.M.A.1977).

■■■■ Pretrial agreements will be strictly enforced based upon the express wording of the agreement. *United States v. Lanzer*, 3 M.J. 60, 62 (C.M.A.1977). A military judge, however, has the responsibility to inquire into the terms and conditions of an existing pretrial agreement, to ferret out ambiguities and to clarify them, to interpret and to disregard any provisions that are contrary to law, public policy and notions of fundamental fairness. *United States v. Green*, 1 M.J. 453 (C.M.A.1976). Ordinarily, the Government and the appellant must be held to the understanding of the pretrial agreement that was evidenced on the record at the time of trial. *United States v. Muller*, 21 M.J. 205 (C.M.A.1986); *United States v. Carter*, 27 M.J. 695 (NMCMR 1988). Where that understanding, however, is based on a military judge's mistaken interpretation of a provision, the understanding is not binding upon the parties, nor the appellate courts. *United States v. Partin*, 7 M.J. 409 (C.M.A. 1979). Where an ambiguity exists, resolution is in favor of the accused. *United States v. Davis*, 20 M.J. 903 (ACMR 1985); *United States v. Whitekiller*, 8 M.J. 772,

774 (NCMR 1979). A military judge's attempted incorporation of terms permitting confinement in excess of the terms permitted by the Maximum Sentence Appendix in the pretrial agreement are ordinarily without legal effect, *see Partin*, but where an accused on the record expressly waives the limitation expressed in the pretrial agreement or even the statute, such limitation is thereby waived. *Hodges*, 22 M.J. at 260.

■■■■ In this case the pretrial agreement between the appellant and the convening authority consisted of two sections, a Memorandum of Understanding section, which set forth the basic and generalized understanding of the parties, and a Maximum Sentence Appendix section, which addressed the specific agreement of the parties as to the maximum sentence that could be approved by the convening authority. The impact of a fine enforcement provision was specifically addressed in the memorandum section of appellant's pretrial agreement. In paragraph 2 of that section, the parties agreed that "Part 4 of the Maximum Sentence Appendix to the Memorandum of the Pretrial Agreement shall expressly include limitations, if any, upon enforcement provisions regarding any adjudged fine." That paragraph further provided that "[a]ny applicable punishment not addressed in the sentencing portion of this agreement shall signify that such punishment may be approved by the convening authority, as adjudged." Part 4 of the Maximum Sentence Appendix to the Memorandum of Pretrial Agreement states that all forfeitures and fines could be approved as adjudged. Part 1 states that all confinement could be approved as adjudged but that confinement in excess of 1 year and 1 day shall be suspended for 1 year from the date of trial.

The military judge interpreted this to mean that, because no limitations were expressly placed therein, any fine enforcement provision adjudged could be executed above and beyond that permitted by the express provisions of the Maximum Sentence Appendix. The military judge and appellate government counsel justify the military judge's interpretation by the last

sentence of paragraph 2, *i.e.*, "[a]ny applicable *punishment* not addressed in the sentencing portion may be approved by the convening authority." (Emphasis added.) The military judge advised the appellant that "[s]trictly by the terms, my understanding of these terms of this agreement [sic] it could be interpreted that suspending confinement in excess of one year and a day is for the period there [sic] in confinement. But if the court could adjudge a fine, an enforcement provision, that that also can be approved."

We agree with the Government that when the military judge advised the appellant he did so based on the last sentence of paragraph 2 which authorized approval of any punishment not otherwise addressed in the Maximum Sentence Appendix. We find, however, such advice was a mischaracterization of the fine enforcement provision. We also believe that the mischaracterization was due to the military judge's, as well as the parties', misunderstanding of the nature of a fine enforcement provision.

 The issue we must now address is whether this mischaracterization amounted to misadvice such that the appellant was prejudicially misled in his understanding of that provision of the pretrial agreement. We hold that the mischaracterization did not amount to misadvice of a prejudicial nature and, therefore, was harmless.

Since the fine enforcement provision is not punishment, the last ("All applicable punishments not addressed ...) sentence of paragraph 2 cannot be used to interpret the preceding sentence. Thus, the enforcement provision sentence of paragraph 2 must be read standing alone, except as it makes reference to Part 4 of the Maximum Sentence Appendix which states "Forfei-

tures and fines. As adjudged." The parties reached an understanding on the record, but that understanding was based on a mischaracterization of the fine enforcement provision by the military judge. Whether that mischaracterization constituted misadvice that adversely impacted upon the appellant's understanding of the practical ramifications of that provision on the potential loss of his liberty depends on the understanding evidenced on the record. If we should find that there was a misunderstanding or that an ambiguity existed, we must resolve the misunderstanding or any resulting ambiguity in favor of the appellant. *See Davis*, 20 M.J. at 903; *Whitekiller*, 8 M.J. at 774.[7] Reviewing the specific provisions of the Pretrial Agreement at issue, we find that paragraph 2 of the Memorandum of Pretrial Agreement is clear on its face and therefore not subject to judicial interpretation. Additionally, our analysis of the Pretrial Agreement, as a whole, along with the appellant's understanding of those provisions as related in his answers during both the providence inquiry and the pretrial agreement inquiry stages, reveals no ambiguity. We find that the forfeiture and fine provision of the Maximum Sentence Appendix expressed no limitation on any fine enforcement provision. We also find that any limitations on any fine enforcement provision adjudged had to be expressly set forth in Part 4 (the forfeiture/fine provision) of the Maximum Sentence Appendix. We further find that appellant and his defense counsel understood that he could be sentenced to forfeitures, and if he had any pay from which forfeitures could be deducted, the pretrial agreement permitted the application of forfeitures; that he could be sentenced to a fine of an unlimited amount and if he could

---

7. The record reflects that appellant and his trial defense counsel initially misunderstood the fine/forfeiture provision of the pretrial agreement, expressed their concern about losing the protection of the pretrial agreement should the convening authority not agree with their understanding of the forfeiture/fine provision, and were somewhat reluctant to accept the convening authority's understanding of the forfeiture/fine consequences. But for the military judge's extensive explanation, including practical illustrations, of the consequences of the fine enforcement provision, we would hesitate to attribute to appellant full knowledge and understanding of its consequences where the sentence authorized for imposition by the court was substantially more than that authorized by the pretrial agreement, and the military judge failed to explain to appellant the open-endedness of the fine enforcement provision and the impact of any failure to pay due to indigence—appellant's inability to pay the fine through no fault of his own. *See United States v. Walker*, 26 M.J. 813 (ACMR 1988).

not pay that fine, it could be "transferred" to a period of confinement and that that period of confinement would run in addition to any confinement adjudged, but that the total period of confinement could not exceed the maximum of 45 years.

We agree that appellant neither contemplated a fine and its accompanying enforcement provision for failure to pay the fine during his negotiation with the convening authority nor understood the terms of the approved pretrial agreement at the time he went to trial. The record is clear, nonetheless, that he did understand the most adverse impact of the fine and fine enforcement provisions might have upon his future after the military judge explained their consequences during the pretrial agreement colloquy with appellant. Thus, we find that the mischaracterization of the fine enforcement provision as "punishment" did not, in practical effect, constitute misadvice such that it prejudicially impacted upon appellant's understanding of the effect of his pretrial agreement. We further find that by acknowledging and accepting the military judge's explanation of the most adverse practical effect of any subsequent execution of the fine enforcement provision by the convening authority, i.e., 5 additional years of confinement, the appellant expressly waived the limitation on confinement as imposed by the pretrial agreement. See Hodges, 22 M.J. at 264.[8]

Accordingly, we find that the pretrial agreement as understood by the parties authorized confinement in excess of the maximum confinement authorized by the confinement provision of the pretrial agreement, i.e., confinement in excess of 1 year and 1 day, which would result were the fine enforcement provision to be executed as a result of the accused's failing to pay the fine immediately. See United States v. Edwards, 20 M.J. 439 (C.M.A.1985); Hodges, 22 M.J. at 264; United States v. Walk-

er, 26 M.J. 813 (ACMR 1988). As a consequence, the convening authority's initial action approving and ordering into execution the sentence adjudged, including the fine enforcement provision of 5 years additional confinement in lieu of payment of the fine, was legal.

III. Was the Convening Authority's Supplementary Action Ordering the Execution of Confinement in Lieu of Appellant's Payment of the Adjudged Fine Lawful?

A. Approval and Execution

Although the sentence adjudged, approved and ordered executed by the convening authority in appellant's case was legal, the convening authority's supplementary action ordering the execution of the fine enforcement provision was illegal. The Court of Military Appeals has stated that:

> a sentence which is "correct in law" and a "legal sentence" are interchangeable terms. It is obvious, therefore, that a board of review may affirm a legal sentence only, and may not affirm one which is illegal. In determining the legality of a juristic penalty we are forthwith remitted, therefore, to its primary source—the court-martial. We are required, we believe, to think of the matter in terms of the original, the fundamental act—that of imposition. If a trial court may lawfully assess a sentence it is a legal sentence. Conversely, if it may not, such a penalty is without warrant of law.

United States v. Brasher, 2 U.S.C.M.A. 50, 52, 6 C.M.R. 50, 52 (1952). Since the sentence adjudged by the court members in appellant's case was a lawful sentence, it follows that the sentence approved and ordered executed by the convening authority was legal. The action initially taken by the convening authority on appellant's adjudged sentence was completely within his discretion. Article 60, UCMJ; United

---

8. The fact that appellant was given the opportunity to be heard and exercised his rights pursuant to R.C.M. 1113(d)(3) cures any harm that he might have suffered by not exercising such rights such that this Court would be required to declare his pleas improvident on the basis he did not understand his rights. We also believe that the military judge and the parties implicitly believed that the additional confinement, if served, would be substitute punishment such that the $6,000.00 fine would be discharged upon the service of that confinement as approved and ordered executed by the convening authority.

*States v. Lanford*, 6 U.S.C.M.A. 371, 20 C.M.R. 87 (1955). While the sentence approved by the convening authority was correct in law and thus a legal sentence, the approval of the sentence is divisible from the order of execution. An illegal order of execution [9] does not "harken back" to make the approval illegal. *United States v. Ranes*, 3 C.M.R. 550 (AFBR 1952), *pet. denied*, 3 C.M.R. 150 (1952). Likewise a supplementary order of execution that is illegal does not render the initial approval and order of execution of the sentence illegal. Appellant was ordered to serve additional confinement as confinement in lieu of payment of the fine by the convening authority in a supplementary convening authority's action ordering it executed. The legality of appellant's confinement for that additional period is dependent upon the legality of that order of execution. *United States v. Soriano*, 22 M.J. 453 (C.M.A. 1986). The convening authority's approval and initial order of execution of the sentence, as it related to the fine enforcement provision, was solely his acceptance of the practical tool given him by the sentencing court to enforce collection of the fine adjudged immediately and without difficulty from a recalcitrant accused. *See United States v. Green*, 735 F.2d 1203 (9th Cir. 1984); *Grier v. Kennan*, 64 F.2d 605 (8th Cir.1933). He had not ordered the execution of the fine enforcement provision as punishment; nor did his initial action give him additional authority to do so subsequently.

R.C.M. 1113(d)(3) permits the effectuation of a fine enforcement provision of any adjudged fine despite the good faith efforts of an indigent accused's failure to pay the fine *as long as* a determination is made that "there is no other punishment adequate to meet the Government's interest in appropriate punishment." [10] The Drafters' Analysis to this Rule informs us that the President included this provision to avoid constitutional problems citing *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).[11] We believe that, at least as applied in appellant's case, R.C.M. 1113(d)(3) did not successfully prevent the constitutional problems it was written to avoid. We also believe that the convening authority was not the proper authority to implement R.C.M. 1113(d)(3) in appellant's case. We will discuss the application problem first and then the implementation problem.

### B. The Application Problem

The supplementary action ordering execution of the 5 years' confinement in lieu of payment of the $6,000.00 fine was unconstitutionally applied in appellant's case because the convening authority executed the fine enforcement provision causing appellant to serve 5 years additional confinement (all confinement in excess of 18 months suspended) for failure of the appellant to pay the $6000.00 fine despite a finding of appellant's inability to do so because he was indigent, not because he was recalcitrant. Under the circumstances of appellant's case, the convening authority arbitrarily transformed the fine enforcement provision into the punishment of 5 years confinement.

---

9. An order of execution is the authority by which an approved sentence is implemented as punishment. R.C.M. 1113.

10. The convening authority gave the appellant reasonable notice and the opportunity to be heard as required by R.C.M. 1113(d)(3). We note he was also represented by counsel, as required by *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977); *cf. United States v. Bingham*, 3 M.J. 119 (C.M.A.1977).

11. The R.C.M. 1003(b)(3) provision authorizes collection enforcement of an adjudged fine much like R.C.M. 1108 authorizes suspended sentences. R.C.M. 1113(d)(3) is the procedure or vehicle by which the fine enforcement provision is, if appropriate, transformed to the punishment of confinement in cases involving indigent accused much like R.C.M. 1109 provides for vacation of suspended sentences. The intent appears to have been to create a procedure analogous to vacation proceedings, R.C.M. 1109, to cure similar and correctly perceived constitutional problems. But, vacation proceedings are statutorily based in Article 72, UCMJ, 10 U.S.C. § 872. We find no specific codal basis for R.C.M. 1113(d)(3).

The Supreme Court decisions in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); and *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), are the primary bases upon which we relied in arriving at our conclusion that the convening authority acted unconstitutionally.

This Supreme Court recognized that for an accused who can pay the fine but willfully refuses to do so, confinement becomes a matter of choice. For an accused who fails to pay the fine because he is unable to do so due to indigency, confinement is not a matter of choice. Confinement due to lack of choice because of indigency has constitutional equal protection, *Williams v. Illinois; Tate v. Short,* and due process—fundamental fairness—ramifications. *Bearden v. Georgia;* "The Supreme Court, 1982 Term," 97 Harv.L.Rev. 70, 86–94 (November 1983). Such ramifications must be dealt with carefully by balancing the interests of the individual with the interests of the Government in punishment and deterrence. *Bearden,* after weighing the decisions in *Williams* and *Tate,* is the last Supreme Court decision that attempts to put the balance in perspective. Let us look at the trilogy.

In *Williams* the Supreme Court held that an indigent could not be imprisoned for his no-fault failure to pay a fine if such imprisonment would exceed the maximum confinement permitted by the legislation prohibiting the conduct for which he was convicted. In *Tate* the Supreme Court refused to permit the confinement of an indigent willing but unable to pay a fine, because to do so automatically transformed a "punishment-by-fine only" legislative policy into a "punishment-by-confinement" offense solely because the defendant was indigent. *Burton v. Goodlett,* 480 F.2d 983 (5th Cir. 1973); *Frazier v. Jordan,* 457 F.2d 726 (5th Cir.1972). The Court found that such a result was

not imposed to further any penal objective of the State. It is imposed to augment the State's revenues but obviously does not serve that purpose; the defendant cannot pay because he is indigent and his imprisonment, rather than aiding collection of the revenue, saddles the State with the cost of feeding and housing him for the period of his imprisonment.

*Tate,* 401 U.S. at 399, 91 S.Ct. at 671, 28 L.Ed.2d at 134. In *Bearden,* the defendant was convicted of burglary and received a sentence of probation conditioned upon his payment of a fine and restitution within a set period of time. Having borrowed money to pay part of the fine, he thereafter lost his job and, unable to secure other work, failed to pay the balance of his fine and make restitution within the set time period. The court revoked his probation for failure to pay his adjudged fine. The Supreme Court held that due process or fundamental fairness prohibited the sentencing court from automatically revoking probation because a probationer could not pay his fine, without determining that the probationer had not made sufficient bona fide efforts to pay or that adequate alternative measures to imprisonment did not exist. Hence, the Court concluded that a sentencing court may not deprive a probationer of his conditional freedom, or transform a sentence of a fine to additional confinement simply because, through no fault of his own, he cannot pay his fine. *Bearden,* 461 U.S. at 672, 103 S.Ct. at 2070, 76 L.Ed.2d at 233. Thus, before the sentencing court can transform contingent confinement as an enforcement provision for failure to pay a fine into confinement as punishment for failure to pay the fine, it must first consider the reasons for the failure to pay; and, if it finds that the defendant "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," it can then impose confinement. *Id.* at 673, 76 L.Ed.2d at 103, 233 S.Ct. at 2070. If the sentencing court finds that the defendant was indigent and "could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternative measures of punishment." *Id.* Only if the sentencing authority determines that alternatives to imprisonment are not

adequate in a particular situation to meet the penal interests of the State in punishment and deterrence may the State imprison a defendant notwithstanding his sufficient bona fide efforts to pay. *Id.*[12] The Court of Military Appeals, however, appears to broaden the latter principle as it applies to the servicemember for it has indicated that it may also be inappropriate to further confine a servicemember who has made a good faith effort to pay the fine but has been unsuccessful. *United States v. Soriano,* 22 M.J. 453 (C.M.A. 1986); *accord, United States v. Estrada de Castillo,* 549 F.2d 583 (9th Cir.1976) (Hufstedler, J., concurring).

When we apply the above principles to fine enforcement provisions authorized within the military justice system, we find that under R.C.M. 1113(d)(3) an accused must be notified that the adjudged fine is due and payable immediately and if it is not paid immediately, additional confinement will be ordered until the fine is paid. If an accused requests the opportunity to be heard and explains the reasons for his failure to pay, and if the reason for his failure to pay the fine is found to be a result of his indigency, alternative measures for confinement must be considered. If, upon consideration of the alternative measures, a decision is made that those alternative measures to confinement are not adequate to meet the penalogical interests of the Government, then an accused must be afforded an opportunity to make a good faith effort to pay the fine, if he has not already had that opportunity. If the accused

makes bona fide efforts to pay the fine but is unsuccessful, then a careful balancing of interests is required: the accused's freedom—to be denied through no fault of his own—against the Government's interest in punishment and deterrence. *Bearden v. Georgia.* The presumption, however, is that alternative means can often fully serve the Government's interests since it is not powerless to collect the fine. *Williams v. Illinois; Tate v. Short.*[13] Even in the military alternative measures are available, *e.g.,* disapproval, suspension, or commutation of the fine; hard labor without confinement; restriction; community service. There are also measures available that would permit collection of the fine itself, *e.g.,* a fine tailored to fit appellant's circumstances such as installment payments over a reasonable period of time; and, the fact that adjudged fines are debts owed the United States always are subject to collection. Department of Defense (DOD) Pay and Allowances Entitlements Manual of 9 March 1987, Chapter 5 (Court–Martial Sentences), paragraph 70507b; Comptroller General Decision B–127765 dated August 3, 1956. *See also,* 18 U.S.C. § 3613; 5 U.S.C. § 5514; 31 U.S.C. §§ 3711, 3720A; *compare* 5 U.S.C. § 5514, and 37 U.S.C. § 1007(c) and Pub.L. No. 97–276 (2 October 1982) (5 U.S.C. § 5514 note) *with* DOD Pay and Allowances Entitlements Manual of 9 March 1987, Chapter 5 (Court–Martial Sentences) and Chapter 7 (Stoppages and Collections Other Than Court–Martial Forfeitures).[14]

---

**12.** The Supreme Court left for further determination resolution of the constitutionality of imprisonment of a defendant who is given alternative means to pay the adjudged fine, which are unsuccessful despite the defendant's reasonable efforts to satisfy the fines by those means. *Tate v. Short; Burton v. Goodlett,* 480 F.2d 983, 985 (5th Cir 1973).

**13.** If a federal defendant fails to pay the adjudged fine, a resentencing hearing must be held before any confinement is imposed for failure to pay the fine. At that resentencing hearing the federal judge is required to balance the interests of the parties. 18 U.S.C. § 3614; *See* Legislative History, Pub.L. No. 98–473 at 109 (98th Cong.2d Sess), 4 U.S.Code Congressional and Administrative News 3292 n. 251 (1984). Additionally, the Criminal Fine En-

forcement Act of 1984 (Pub.L. No. 98–596) amended 18 U.S.C. § 3569 by deleting language that permitted at least 30 days imprisonment of an indigent prisoner for failure to pay a committed fine because it was unconstitutional. Legislative History, 5 U.S.Code Congressional and Administrative News 5443.

**14.** As to the chapters of the DOD Pay and Allowances Entitlements Manual to which we cite for comparison, we note that the Manual is very specific in defining and using the terms "forfeitures" and "fine" and that we therefore applied that specificity when reading the provisions in Chapter 7 and concluded that Chapter 7 was applicable to fines adjudged at courts-martial although not to forfeitures. *Pampanga Sugar Mills v. Trinidad,* 279 U.S. 211, 49 S.Ct. 308, 73 L.Ed. 665 (1929).

We have looked to military law precedent to determine how those constitutional principles have been implemented by the military justice system and find little guidance. While the 1951 and 1969 MCM's do not indicate any recognition of the plight of an accused who is unable to pay the fine due to his indigence, the old stand-by Winthrop does. At paragraph 642 of *Military Law and Precedents* (2d ed. 1920), he states:

> [b]ut, especially as there is no process known to the military law by which a convict, destitute by means, can, because of his inability be relieved from imprisonment imposed for the enforcement of the fine, it is usual and proper in a military sentence to declare that such an imprisonment shall not exceed a certain term of months or years; otherwise—pardoning power not intervening—the confinement might be indefinitely prolonged.

Historically, then, military procedures were similar to the "committed fine" procedures utilized by the federal civilian courts prior to the changes wrought by judicial precedent and statutory changes imposed as a result of *Williams, Tate,* and *Bearden.*

R.C.M. 1113(d)(3) briefly addresses the change required by Supreme Court precedent and does implement some change in past procedures by limiting the ability to enforce collection of an unpaid fine by imposition of confinement until minimal due process is afforded the accused. It allows the accused to demonstrate that he has made good faith efforts to pay the fine but cannot because he is indigent. Upon such a showing, the "authority" then must determine, "after giving the accused notice and opportunity to be heard, that there is no other punishment [alternative measures] adequate to meet the Government's interest in appropriate punishment." In this regard, R.C.M. 1113(d)(3) has tried to follow the Supreme Court trilogy and is analogous in spirit, at least, to 18 U.S.C. §§ 3572 and 3614. Like the Supreme Court decisions, but unlike the federal statutes, the manner in which it is to be practically applied has not been clearly enunciated.

For example, 18 U.S.C. § 3572 sets forth factors that must be considered by a federal judge in determining whether to impose a fine. Section 3614 sets forth the factors a federal judge must consider in determining whether to resentence a defendant based upon his failure to pay an adjudged fine. By what standard, though, is the R.C.M. 1113(d)(3) authority to exercise his discretion in making similar determinations in a servicemember's case? We find none. R.C.M. 1113(d)(3) completely lacks the definitive guidance of the federal provisions. In fact, unlike the federal system, neither the court-martial nor any other authority is provided guidance (with the exception of unjust enrichment set forth in the Discussion to R.C.M. 1003(b)(3)) as to what factors must, or even should, be considered before adjudging a fine, *see United States v. Jones,* 28 M.J. 939 (NMCMR 1989), or, more importantly in situations like that before us now, for transforming a fine enforcement provision into the punishment of confinement. Therefore, we must evaluate the decision of the convening authority based upon the constitutional principles outlined in the *Bearden–Williams–Tate* trilogy.

The facts in appellant's case become critical to our evaluation of the convening authority's transformation of the fine enforcement provision of appellant's adjudged fine to the punishment of an additional 5 years confinement (all confinement in excess of 18 months suspended). We make the following findings of fact. The appellant's previous disciplinary history includes two nonjudicial punishments, a special court-martial, and a general court-martial for offenses similar to those of the appellant's general court-martial presently before us for review. The appellant was sentenced to a bad-conduct discharge, 5 months confinement, forfeitures of $400.00 pay per month for 5 months and a reduction to pay grade E–1 by the special court-martial. The previous general court-martial adjudged him a dishonorable discharge, 30 months confinement, with all confinement in excess of 18 months suspended, and forfeitures of all pay and allowances. At the time of this general court-martial, the accused was serving confinement and was in a no-pay status owing to total forfei-

tures adjudged and ordered executed from his previous general court-martial. Appellate review of appellant's prior general court-martial was not final when the convening authority transformed appellant's fine to additional confinement in this case. We also find that the offenses for which appellant stands convicted by the court-martial presently under our review were offenses committed prior to his previous general court-martial. Additionally, the appellant explained under oath during the extenuation and mitigation stage of this court-martial that he had severe financial problems as a result of medical bills incurred by his wife for whom he could not obtain military medical care because she was not present in the United States (she is a Mexican citizen living in Mexico), that he could not obtain entry for her into the United States and thus could not obtain a military dependent's identification card for her, and that because of these circumstances, she was also not eligible for CHAMPUS. Appellant altered nine of his government paychecks to reflect amounts in excess of the face of the checks in order to support his wife, and prevent the possibility of her being jailed by Mexican authorities for failure to pay debts and resorting to prostitution to support herself and two children. Appellant's post-trial petition for clemency reiterates his marital and financial difficulties and also relates that he has been an outstanding performer while confined at the Camp Pendleton brig. He also submitted affidavits that are unrebutted by the Government which specifically outline his debts and support his claim of indigence.

Appellant, through his defense counsel, proposed to the convening authority two alternatives to confinement in view of his inability to pay the fine and in lieu of his ordering executed the fine enforcement provision of additional confinement for the purpose of punishment. First, the appellant proposed that the convening authority suspend all forfeitures and that additional funds to pay off the fine could originate

from claims he intended to file with the U.S. Treasury. The appellant contended that the Government never paid the banks for the checks he altered and therefore his real debt of $5,200.00 was to the bank which cashed his altered checks. Appellant proposed that, since the Marine Corps Finance Center (MCFC) said it owed him the face amount of the unaltered checks, or $3,379.00, plus an additional $1,758.00 for checks he altered but were returned to MCFC uncashed, for a total of $5,137.00, the convening authority should suspend the fine and enforcement provision until he obtained payment from MCFC and paid off the debt he owed the banks. Upon payment of the debt, the convening authority would remit the fine. Alternatively, the appellant proposed that the amount owed him be used to pay the fine and the $863.00 which he was short could possibly be raised by appellant and his family. He also offered to enter into a post-trial agreement as an alternative to confinement. The staff judge advocate informed the convening authority that MCFC informed him that the Government owed appellant nothing. In response to appellant's proposals, the hearing officer stated:

> This proposal serves only as an alternative to confinement, in that it assists Private Rascoe in paying the fine. In essence, the Government is assuming Private Rascoe's financial obligation. I am of the opinion that the enforcement provision of the fine was deemed an appropriate punishment by the court-martial as was the sentence of total forfeitures. To allow Private Rascoe to escape the consequences of such forfeitures was not what the court had in mind, as appropriate, or they would not have sentenced him as such. Since Private Rascoe's record indicates a history of criminal activity, no other punishment, other than confinement, is adequate. However, I would recommend favorable action upon a request for clemency after the fine is paid in full.[15]

---

**15.** Here again, a misunderstanding of the nature of a fine enforcement provision as punishment is demonstrated. Additionally, as can be seen

*infra,* the proposals offered by the appellant, though somewhat ephemeral in nature, were in fact alternatives to confinement. Alternatives

The hearing officer found appellant unable, due to indigence, to pay the fine, and then determined that additional confinement was the only punishment adequate to meet the Government's penal interests. The staff judge advocate's advice to the convening authority in his addendum to his staff judge advocate recommendation stated: "I concur with the hearing officer's findings and recommendations. It appears extremely unlikely that the Government will ever be paid." He therefore recommended that the convening authority order "confinement in lieu of payment of the fine" executed but "suspend execution of the confinement in lieu of payment of the fine in excess of 18 months." The convening authority followed the recommendation of his staff judge advocate. The appellant's fine was thereby transformed into confinement.[16]

Appellant did not willfully refuse to pay the fine.[17] He refused because he was indigent and the convening authority accepted the fact of his indigence.[18] Considering appellant's status of past, present, and future confinement, his explanation of his past and present financial situation and the efforts he had undertaken, or anticipated undertaking, to pay the fine at the time of his R.C.M. 1113(d)(3) hearing reflects, in our minds, either a bona fide effort, or lack of sufficient opportunity to make a bona fide effort, to acquire the resources to pay the fine. The convening authority, however, ordered the execution of the confinement in lieu of the payment enforcement provision because he determined that "aside from confinement in lieu of payment of the fine, there is no other punishment adequate to meet the Government's interest in appropriate punishment." Nowhere in his supplementary action, and nowhere in the hearing officer's report or the advice given by the staff judge advocate does there appear any indication that alternative measures to confinement, as required by *Bearden*, were ever seriously considered by anyone, and most particularly the convening authority. R.C.M. 1113(d)(3) expresses the consideration of alternative measures requirement in the subtle terms

to confinement, including any raised by appellant, must be considered by the convening authority. *See, e.g., Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). The hearing officer stated the obvious and then disregarded, almost out of hand, the alternatives proposed by appellant on grounds that since the court members adjudged confinement as the means to enforce the payment of the fine, then confinement was the only appropriate punishment for appellant's failure to pay the fine. To reject all alternatives out of hand was an abuse of discretion because alternative measures were not devised that would have given appellant a reasonable opportunity to meet his obligations under the adjudged sentence. *See United States v. Thomas*, 774 F.2d 807 (7th Cir.1985), *cert. denied*, 475 U.S. 1024, 106 S.Ct. 1218, 89 L.Ed.2d 329 (1986).

**16.** We do not address the issue of whether the convening authority's, or any other authority's, transformation of the sentence such that a confinement is substituted for a fine violates the principle announced in *Pearce v. North Carolina*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (prohibits increasing the severity of a sentence for exercising a constitutional right). *Cf. Burton v. Goodlett*, 480 F.2d 983, 986 (5th Cir.1973).

**17.** Nothing in this decision, or the precedents cited, precludes confinement as an enforcement mechanism, *per se*, to recover fines, or for willful refusal to pay a fine. It is the lack of fault in an indigent's failure to pay a fine, which justifies and mitigates the violation and makes additional confinement potentially inappropriate and unconstitutional. *Tate; see United States v. Soriano*, 22 M.J. 453 (C.M.A.1986). Nor does our holding necessarily mean that the parties cannot agree to the transformation of a confinement in lieu of a fine provision into the punishment of confinement, or other alternative measures, within a pretrial agreement. It only means that an accused must fully understand a fine enforcement provision with all its ramifications and the military judge must ensure that he understands it. *United States v. Hodges*, 22 M.J. 260 (C.M.A.1986); *United States v. Walker*, 26 M.J. 813, 815 (ACMR 1988).

**18.** We do not address the issue of whether the decision to execute the additional confinement in lieu of payment of the fine would be inappropriate or contrary to public policy had the terms of the pretrial agreement, in fact, included a provision whereby appellant had promised to pay restitution and/or any fine adjudged despite his present or future status of indigency. *See United States v. Foust*, 25 M.J. 647 (ACMR 1987); *United States v. Callahan*, 8 M.J. 804 (NCMR 1980); *United States v. Rodgers*, 49 C.M.R. 269 (ACMR 1974); *contra United States v. Brown*, 4 M.J. 654 (ACMR 1977); *Barnett v. Hopper*, 548 F.2d 550, 552–553 (5th Cir.1977).

of "no other punishment." Neither the Code nor the Manual provide the R.C.M. 1113(d)(3) authority any guidelines as to what "other punishment" should be considered. Our concern with the convening authority's determination is that his decision that "there is no other punishment to meet the Government's interest in punishment" was based upon the advice of his staff that appellant's

> proposal serves only as an alternative to confinement ... the enforcement provision of the fine was deemed an appropriate punishment by the court-martial as the sentence of total forfeitures. To allow Private Rascoe to escape the consequences of such forfeitures was not what the court had in mind, as appropriate, or they would not have sentenced him as such. Since Private Rascoe's record indicates a history of criminal activity, no other punishment, other than confinement, is adequate.

But, as we read the Supreme Court trilogy, the punishment adjudged by the sentencing court was the fine, not the fine enforcement provision. An indigent accused, therefore, must be given the opportunity to make bona fide efforts to pay the fine before any consideration can be given to transforming the fine enforcement provision into punishment. In appellant's case, the convening authority denied the appellant's request for that opportunity when he rejected the alternatives proposed by the appellant and failed to afford him a reasonable opportunity to pay. We also believe the convening authority misunderstood the concept of indigency and its relationship to fundamental fairness and equal protection because again we believe he based his decision upon advice that also misunderstood the application of those principles, that is "I would recommend favorable action upon a request for clemency after the fine is paid in full." If an accused is in confinement, has been and will continue to be, has no pay coming due, with a family that is unable to support itself financially, how could it reasonably be expected that he pay the fine in full? While the convening authority may have been proven correct in his prejudgment that appellant's proposed alternatives were without merit, appellant was entitled to be given some opportunity to pay the fine and his opportunities were severely limited considering his confinement status.[19]

We find that R.C.M. 1113(d)(3) provides no guidance specifically addressing the criteria for transforming a fine enforcement provision into punishment. In fact, as we previously stated, R.C.M. 1003(b)(3) provides no guidance for imposition of the fine or fine enforcement provision.[20] We also find that the Code, the Manual, and mili-

---

**19.** We, much like the Ninth Circuit in *United States v. Estrada de Castillo*, 549 F.2d 583 (9th Cir.1976), *reh'g* and *reh'g en banc denied* (1977), find that the Government has adequate tools to move, at any time, against appellant's property, such that the underlying fine is not discharged if appellant does not pay the fine because he is presently indigent. *Id.* at 586; *Bearden v. Georgia*, 461 U.S. at 672, 103 S.Ct. at 2077, 76 L.Ed.2d at 233. Thus despite the advice of the staff judge advocate, the Government could always have collected the money it was due were appellant ever to have sufficient funds come into his hands, as for example, upon entitlement to income tax refunds (31 U.S.C. § 3720A).

We also note, as did the Supreme Court in *Williams:*

> We are not unaware that today's holding may place a further burden on States in administering criminal justice. Perhaps a fairer and more accurate statement would be that new cases expose old infirmities which apathy or absence of challenge has permitted to stand. But the constitutional imperatives of the Equal Protection Clause must have priority over the comfortable convenience of the status quo.

*Williams,* 399 U.S. at 245, 90 S.Ct. at 2018, 26 L.Ed.2d at 595.

**20.** It does limit the amount of a fine that can be imposed by a special court-martial but does not limit that imposable by a general court-martial. Of course, the lack of statutory or regulatory maximum on fines imposable at general courts-martial does not allow unchecked fines. It merely places upon the courts of military review and other reviewing authorities an increased responsibility to review the appropriateness of the fine adjudged. At this time we make no determination as to the applicablity of any equivalency standard for transforming fines into confinement, *e.g.,* "$30.00 or 30 days." *Frazier v. Jordan*, 457 F.2d 726 (5th Cir.1972); *see Williams,* 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970); *Abbit v. Bernier,* 387 F.Supp. 57, 61 (D.Conn.1974).

tary judicial precedent fail to provide adequate guidelines for the Court to review the decision of the R.C.M. 1113(d)(3) authority's transformation of the fine enforcement provision into punishment. In the absence of such guidelines we have determined that it is proper for us to consider the federal criteria found in 18 U.S.C. §§ 3572 and 3614. We do so based on the fact that Article 36, UCMJ, 10 U.S.C. § 836, requires the President to establish procedures and rules of evidence as closely related to those practiced in federal district courts as practicable. We believe the President would turn to these established federal criteria were he to implement criteria for the military.

Accordingly, we have reviewed the findings of fact we made, *infra,* and applied the following criteria to those findings to determine the appropriateness of the imposition of the fine and fine enforcement provision:

(1) the accused's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the accused, any person who is financially dependent on the accused, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the accused, relative to the burden that alternative punishments would impose;

(3) any pecuniary loss inflicted upon others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive the accused of illegally obtained gains from the offense;

(6) whether the accused can pass on to consumers or other persons the expense of the fine....

Additionally, we have applied the following criteria to determine the appropriateness of the transformation action:

(1) whether the accused willfully refused to pay the delinquent fine or had failed to make sufficient bona fide efforts to pay the fine; or

(2) whether in light of the nature of the offense and the characteristics of the person, alternatives to imprisonment are not adequate to serve the purposes of punishment and deterrence.

As a result, we find that the fine and the fine enforcement provision were inappropriately severe but not illegal since the President has authorized the imposition of fines without limitation at general courts-martial. We find that appellant's offenses were not violent; and, although he obtained money fraudulently, he had extensive extenuating circumstances, including the fact that the offenses of which he was presently convicted arose out of the same series of fraudulent transactions for which he had previously been convicted and of which the Government was aware at the time of his previous court-martial. We also find appellant and his family have no alternative means of support. The financial position appellant found himself in that caused him to resort to fraudulent activity was due to substantial medical expenses for his wife that could not be covered by his military status because of his inability to obtain dependency status for her. The record further reflects that appellant made restitution for the offenses of which he had been convicted at his first general court-martial, but, due to his no pay due status as a result of total forfeitures of pay and allowances at his first and second general courts-martial, he has not made and could not make restitution for the offenses of his second court-martial.[21] He was not a recid-

**21.** *Until the implementation of the less restrictive R.C.M. 307(c)(4), traditional military practice favored trial of an accused for all known charges at the same court-martial. In appellant's case that tradition was not followed despite the fact that the Government was put on notice by the appellant himself that he had altered and presented additional government paychecks at the time of his interview with agents of the Naval Investigative Service for similar offenses of which he was ultimately* convicted and sentenced at a general court-martial held 11 months prior to the one we now review, the offenses of which were the result of that prior interview. We note that appellant was serving his sentence adjudged by the previous general court-martial at the time of this second general court-martial. While the current law does not require trial of all known charges at the same court-martial, and we find no evidence of unreasonable or vexatious

ivist such that further additional punishment beyond that already executed by the convening authority was needed to satisfy the penal interests of the Government.[22]

We also find that the transformation of the fine enforcement provision into the punishment of confinement was arbitrary since alternative measures were not seriously considered. We find that alternative measures were available, *see infra*, although admittedly at an inconvenience and delay to the Government for collection of the fine. We also are not able to identify what the Government's interest in further punishment and deterrence was, as to this indigent appellant, given that he had, at the time of the R.C.M. 1113(d)(3) hearing, three punitive discharges, successively adjudged periods of confinement of 5 months, 30 months (confinement in excess of 18 months suspended), and 6 months, plus forfeitures of $500.00 pay per month for 5 months followed by two total forfeitures of pay and allowances. The convening authority's action amounted to no more than confining appellant for *at least* an addition-

al 18 months solely because he lacked the funds to pay the adjudged fine immediately and a determination, based on present circumstances only, that the Government would never be able to collect the fine. Confinement of an individual *solely* because he or she is indigent without considering alternative measures and providing an opportunity to fulfill the obligation by those measures is an unconstitutional application of R.C.M. 1113(d)(3). *See United States v. Soriano*, 22 M.J. 453 (C.M.A. 1986); *United States v. Vinyard*, 3 M.J. 551 (ACMR 1977); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *United States v. Gaines*, 449 F.2d 143 (2d Cir.1971); *Abbit v. Bernier*, 387 F.Supp. 57, 61 (D.Conn.1974).

In sum, we find that appellant was confined solely because he was indigent. Thus, the transformation of the fine enforcement provision into punishment such that appellant was required to serve additional confinement as punishment was con-

---

Government conduct such that appellant was deprived of any of his due process rights, we will consider in determining the appropriateness of the sentence, the sentence adjudged by itself and in conjunction with the sentence of his first general court-martial. *See United States v. Alexander*, 29 M.J. 877 (AFCMR 1989).

**22.** As appellant was indigent and in confinement at the time of trial with no evidence of record that his financial situation would change while he continued to serve the sentences to confinement adjudged at his first and second general courts-martial, it was foreseeable that appellant would not be able to pay the fine when it became due and payable, even over a reasonable period of time. This should have been foreseeable to the court members based on the evidence presented during sentencing, and would have been foreseeable had they been provided with guidance such as the factors set forth in 18 U.S.C. § 3572. It would also have been foreseeable to the convening authority at the time he took his initial action; but, it certainly should have been obvious to him when he took his supplementary action.

We have no doubt that the military services, of course, have a fundamental interest in appropriately punishing servicemembers, officer and enlisted, rich or poor, who violate the Uniform Code of Military Justice. A military defendant's indigence in no way immunizes him or her from punishment. We believe, however, there

are few circumstances that would justify additional imprisonment for a servicemember who is unable to pay an adjudged fine due to indigency. *See Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *United States v. Soriano*, 22 M.J. 453 (C.M.A.1986); *United States v. Vinyard*, 3 M.J. 551 (ACMR 1977). Nothing precludes the sentencing authority, the court members in appellant's case, from imposing on an indigent servicemember, as on any military accused, the maximum penalty prescribed by law, subject, of course, to subsequent review for appropriateness of the sentence. In this case, however, the members adjudged 6 months confinement for these offenses, reflecting their determination that the military's penal interests required no further term of confinement. *See Vasquez v. Cooper*, 862 F.2d 250, 255 (10th Cir.1988); *Frazier v. Jordan*, 457 F.2d 726 (5th Cir.1972). Additionally, the pretrial agreement as we have previously determined, placed a ceiling of 1 year and 1 day on any confinement appellant had to serve. This would indicate the convening authority's determination that the military's penal interest was adequately protected by confinement for 1 year and 1 day. Even assuming that the convening authority approved the pretrial agreement based upon a misunderstanding of the nature and scope of the fine enforcement provision, we cannot attribute his misunderstanding of the law to the accused such that the accused suffers further confinement. *Cf. United States v. Hodges*, 22 M.J. 260 (C.M.A.1986).

trary to constitutional principles of equal protection and fundamental fairness.[23]

## C. The Implementation Problem

▮▮▮▮ The authority to execute the fine enforcement provision or to transform it into punishment is significant authority because it results in loss of a servicemember's liberty. It thus involves responsible decision-making and cannot be taken lightly or as a *pro forma* act. R.C.M. 1003(b)(3) does not identify the authority who has the responsibility for making the decision. R.C.M. 1113(d)(3)'s identification of "the authority" is vague. Such vagueness requires judicial interpretation and such interpretation must take into account statutory and presidential authority for the provision and its logical interrelationship with other existing provisions, in this instance other existing sentencing/post-sentencing authority. Our examination of the authority issue as interpreted by the convening authority in appellant's case reveals a codal/manual problem if "the authority" is the convening authority.

At the crux of the problem was the drafter's attempt in 1984 to retain the military's traditional committed fine while seeking to remedy its unconstitutional application to indigents by injecting into the military justice system a civilian fine enforcement procedure vaguely defined with approval by the Supreme Court. In doing so they apparently failed to consider the specific type of authority and decision-making that was required within the military justice system for effectuating the contingent confinement, if, in fact, such effectuation was appropriate.

As we have previously described, when a federal court adjudged a sentence that included a committed fine, the administrative offices of the court issued a warrant of commitment. Such a warrant was valid as long as it merely reiterated the sentence of the court. *United States v. Cuen*, 9 U.S.C. M.A. 332, 339, 26 C.M.R. 112, 119 (1958); *Hill v. United States*, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283 (1936). In fact, the contingent confinement was self-executing as a result of the judgment of the court that imposed the committed fine. *Id.* Federal defendants therefore automatically began serving confinement for contumacious conduct if the fine was not paid on the date specified by the court. The indigent federal defendant, who applied for discharge of the fine and release from the confinement after serving 30 days confinement, however, was released and the fine discharged. Congress effectively changed the federal committed fine statute in 1987 in light of the *Bearden–Williams–Tate* trilogy.[24] Since 1987, then, federal judges have been able to impose a committed fine, but only if the judge finds that the defendant is not indigent and can pay the fine. 18 U.S.C. § 3565; Legislative History, "The Criminal Fine Enforcement Act of 1984," P.L.98–596, 5 U.S.Code Congressional and Administrative News 5437 (1984). In fact, 18 U.S.C. § 3572(e) prohibits the imposition, at the time the sentence to pay a fine is imposed, of an alternative sentence to be served if the fine is not paid. Once the fine is adjudged, the fine can be collected like a judgment is collected in civil cases, 18 U.S.C. § 3613; but 18 U.S.C. § 3614 pro-

**23.** We want to make it clear though that we do not believe, and under no circumstances do we find, that the convening authority knowingly violated appellant's constitutional rights because the legal issues we decide today have not been previously addressed fully by the appellate military courts. Further, he was required to make decisions for which the Uniform Code of Military Justice and the Manual for Courts–Martial, United States, 1984, provide inadequate guidance. Due to this gap in decisional law and statutory/regulatory guidance, we, too, were confronted with a question as to whether we could provide effective appellate review given the absence of fact and statement of reasons by the convening authority for his ordering the

fine enforcement provision executed. *Cf. United States v. Jones*, 28 M.J. 939 (NMCMR 1989); *United States v. Levy*, 865 F.2d 551 (3rd Cir. 1989). We determined, however, that our Article 66(c) fact-finding responsibilities provided us that ability considering the completeness of the record provided by the convening authority.

**24.** The new statutes relating to the imposition of fines, collection of fines, and fine enforcement were effective on the first day of the first calendar month beginning 36 months after October 12, 1984 and applicable only to offenses committed after 1 November 1987. *Studley*, 874 F.2d at 819.

vides the Government an alternative to collecting the fine pursuant to § 3613.[25] Instead, § 3614 permits the Government to bring the federal defendant who has failed to pay the adjudged fine before a judge for resentencing.[26] Section 3615 then limits the imposable sentence at resentencing by providing that "Whoever, having been sentenced to pay a fine, willfully fails to pay the fine, shall be fined not more than twice the amount of the unpaid balance of the fine or $10,000, whichever is greater, imprisoned not more than one year, or both."

On the other hand, both prior and subsequent to 1984, the court-martial did not, and does not, have to make any findings that the accused was indigent and had the ability to pay before adjudging a fine and a fine enforcement provision.

Additionally, once the court-martial adjudges a sentence, including a fine enforcement provision, and the court adjourns, the court-martial loses all authority over the case,[27] and such authority passes to the convening authority for approval and execution. Unlike the federal court judgment, the judgment and sentence of a court-martial is inchoate and cannot stand on its own merits. We must now look to the authority of the convening authority to determine whether he serves as the mechanism by which the military justice system enforces collection of adjudged fines or resentences if an accused cannot pay the fine due to indigency.

Article 60, UCMJ, 10 U.S.C. § 860, and Rule for Courts–Martial 1107(d) are silent about the convening authority's specific authority for executing fine enforcement provisions other than to approve, disapprove, modify, mitigate, or commute (*see* footnote 4, *supra*) them when taking action on the sentence itself. Rule for Courts–Martial 1107(d) states:

(1) *In general.* The convening authority may for any or no reason disapprove a legal sentence in whole or in part, mitigate the sentence, and change a punishment to one of a different nature as long as the severity of the punishment is not increased....

(2) *Determining what sentence should be approved.* The convening authority shall approve that sentence which is warranted by the circumstances of the offense and appropriate for the accused....

Also, Rule for Court–Martial 1107(f)(2) states: "The convening authority may recall and modify any action taken by that convening authority at any time before it has been published or before the accused has been officially notified." A plain reading of R.C.M. 1113(d)(2) and R.C.M. 1107(f) reveals a paradox. The former requires the accused to demonstrate why he cannot pay the adjudged fine when it becomes due and payable. But a fine does not become due and payable until the convening authority approves and orders it executed. When the convening authority approves and orders the sentence, including the fine and any fine enforcement provision, executed, he is then required to notify the accused of his action. R.C.M. 1107(h). Such notification is the notification that activates R.C.M. 1107(f) that precludes the convening authority from modifying the adjudged sentence that he approved and ordered executed.

Upon examination of the paradox in relation to the history and judicial precedent surrounding fine enforcement provisions, we conclude that any action taken subsequent to the convening authority's action that orders an accused who willfully refuses to pay the fine confined until he pays the fine merely executes contingent confinement, *i.e.,* confinement solely for contumacious conduct, as authorized by the

25. Neither the Code nor the Manual have provisions similar to 3613 although the DOD Pay and Allowances Entitlements Manual provisions are analogous.

26. 18 U.S.C. § 3614 provides:
(a) *Resentencing.*—Subject to the provisions of subsection (b), if a defendant knowingly

fails to pay a delinquent fine the court may resentence the defendant to any sentence which might originally have been imposed.

27. The rare exception being a post-trial Article 39(a) session directed by the military judge. R.C.M. 1102.

judgment of the court-martial pursuant to R.C.M. 1003(b)(3) as approved by the convening authority. Such action is similar to the discretionary authority given the officer exercising court-martial jurisdiction over an accused whose punitive discharge has been finally affirmed by appellate authorities. Article 74(a), UCMJ, 10 U.S.C. § 874(a); R.C.M. 1113(c)(1), MCM, 1984. The authority who has discretion to order contingent confinement executed may do so upon expiration of the time for payment of the fine. In ordering execution of the contingent confinement, the authority merely carries out the order of the sentencing authority as approved and ordered executed by the convening authority upon the happening of a specified event, *i.e.*, the nonpayment of the adjudged fine. The confinement is merely a means to encourage the accused to pay the fine adjudged against him. As pointed out by the Court of Military Appeals: "While the accused may suffer further imprisonment as a result of this provision, it must be remembered that 'he carries the keys of his prison in his own pocket.'" *DeAngelis*, 12 C.M.R. at 62 (citations omitted). In effect, supplemental action taken to effectuate contingent confinement for the contumacious conduct is similar to the issuance of a warrant of commitment in the federal system prior to 1987, and as such, an accused is not detained by virtue of that action but on account of the judgment and sentence of the court as approved and ordered executed by the convening authority. *See Hill v. United States*, 298 U.S. 460, 465, 56 S.Ct. 760, 763, 80 L.Ed. 1283, 1287 (1936); Annotation, 36 L.Ed. 960.

From this analysis we conclude first that R.C.M. 1107 contemplates judicial action, *United States v. Fernandez*, 24 M.J. 77, 78 (C.M.A.1987). Second, execution of confinement until the fine is paid due to contumacious conduct is a self-executing judicial order based upon the court-martial sentence as approved and ordered initially executed by the convening authority in accordance with the requirements of R.C.M. 1107. *See Hill v. United States.* Third, R.C.M. 1003(b)(3) is analogous to 18 U.S.C. § 3572 with the only limitation placed upon confinement for the contumacious failure to pay the fine being the maximum confinement authorized by the sentencing court or for the offenses of which the accused was convicted. *See Bearden v. Georgia.* Fourth, because imposition of a fine, including a fine enforcement provision as authorized by R.C.M. 1003(b)(3) as qualified by R.C.M. 1113(d)(3), requires approval in accordance with R.C.M. 1107 procedures, R.C.M. 1113(d)(3) contemplates judicial action as well. *See United States v. Fernandez.*

R.C.M. 1113(d)(3), on the other hand, contemplates judicial action for something other than contumacious conduct. It contemplates the exercise of discretionary authority in transforming contingent confinement into confinement as punishment for accused who are indigent and cannot pay the fine. In this regard, it is similar to action prohibited by 18 U.S.C. § 3572(e) while implementing a decision-making process similar to that required by 18 U.S.C. § 3614. It requires that the R.C.M. 1113(d)(3) authority make a finding as to the accused's claim of indigency, consider alternative measures, and determine whether the Government's penal interests in punishment or deterrence can be adequately met by alternative measures. The question raised at this point is what is the role of "the authority" exercising discretionary authority under R.C.M. 1113(d)(3). Is "the authority" a resentencing authority like the federal judge, or is "the authority" a post-sentencing authority like the convening authority or the officer exercising general court-martial jurisdiction in other post-sentencing proceedings required by the Code and Manual?

Since R.C.M. 1113(d)(3) authority is activated only upon a claim of indigency and since appellant's case involves not only a claim of indigency but a finding of indigency, we will address the interrelationship of R.C.M. 1107, R.C.M. 1003(b)(3), and 1113(d)(3) in that context. R.C.M. 1113(d)(3) permits "the authority", to confine an indigent accused if the authority determines that "there is no other punishment adequate to meet the Government's

interest in appropriate punishment." Since such a determination may result in the transformation of an inchoate enforcement provision into choate punishment, such transformation is more than mere execution of a sentence ripe for execution. *Cf.* Article 71, UCMJ, 10 U.S.C. § 871, R.C.M. 1113(c). Instead, it is a substantial modification of the approved and ordered executed sentence. Furthermore, when the punishment of a fine is transformed into confinement, a more severe punishment is imposed, *see Bearden v. Georgia;* "The Supreme Court, 1982 Term," 97 Harv.L. Rev. at 88 n. 13, unless a rational determination can be made for the length of the confinement substituted. *See Bearden v. Georgia,* 461 U.S. at 676, 103 S.Ct. at 2078, 76 L.Ed.2d at 235 (White, J. concurring). R.C.M. 1107(f)(2) precludes a convening authority from modifying his action subsequent to the publishing of his initial action. The convening authority is also precluded by R.C.M. 1107(d)(1) from increasing punishment imposed by the court-martial.

We conclude that a convening authority is not "the authority" referred to in R.C.M. 1113(d)(3). Instead, we believe the authority intended by the President was the officer exercising general court-martial jurisdiction over the accused at the time the R.C.M. 1113(d)(3) comes into play. Such an interpretation is consistent with all other actions taken in an accused's case after the convening authority has taken action on the sentence. *See, e.g.,* Articles 72 and 74; R.C.M. 1112 and *Discussion,* R.C.M. 1112(f)(1); R.C.M. 1113(c).

In appellant's case, appellant was not under the jurisdiction of the convening authority at the time the convening authority took his supplementary action; therefore, the convening authority acted without authority when he implemented R.C.M. 1113(d)(3) proceedings and promulgated the supplemental action. The action was, therefore, null and void. *United States v. May,* 10 U.S.C.M.A. 358, 27 C.M.R. 432 (1959). This does not end our comments, however.

Even assuming that the officer exercising general court-martial jurisdiction over the appellant at the time, *i.e.,* the Commanding General, Marine Corps Base, Camp Pendleton, had acted in the same manner as the convening authority and transformed appellant's fine into 5 years confinement as a punishment substitute for the fine, we also question his authority to do so. We question that authority because of the role he would have performed when he executed the transformation. In appellant's case the 5 years confinement, even with confinement in excess of 18 months suspended, was no longer a collection mechanism to enforce collection of the adjudged fine. The indigency finding negated the legal significance of the fine enforcement provision and acknowledged the lack of any immediate possibility of payment of the fine and any willful refusal to pay. Furthermore, the appellant had been in a continued status of confinement that prevented him from making any bona fide effort to pay the fine other than what he offered as alternatives to confinement during his R.C.M. 1113(d)(3) hearing. The record also indicates that the Government did not provide the appellant a reasonable opportunity to pay. Transformation based on such facts and procedure the *Bearden–Williams–Tate* trilogy identified and condemned as being in the nature of resentencing without resentencing authority. As a result of that identification, Congress revamped similar federal sentencing procedures to include fine enforcement procedures, including resentencing. 18 U.S.C. §§ 3572, 3612–3615. We find no codal or regulatory authority for an officer exercising general court-martial jurisdiction to resentence.

We rely on *Bearden* for our finding that R.C.M. 1113(d)(3), by permitting transformation of a fine enforcement provision into confinement as a substitute for payment of the fine and thus punishment despite a finding of indigency, is in the nature of resentencing. In dealing with transformation from the inchoate fine enforcement provision to the choate confinement, the Supreme Court stated in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983):

Under our holding the sentencing court must focus on criteria typically considered daily by sentencing courts throughout the land in probation revocation hearings: whether the defendant has demonstrated sufficient efforts to comply with the terms of probation and whether nonimprisonment alternatives are adequate to satisfy the State's interests in punishment and deterrence. Nor is our requirement that the sentencing court consider alternative forms of punishment a "novel" requirement. In both *Williams* and *Tate,* the Court emphasized the availability of alternative forms of punishment in holding that indigents could not be subjected automatically to imprisonment.

At 673 n. 12, 103 S.Ct. at 2073 n. 12, 76 L.Ed.2d at 233 n. 12. We note that the Court consistently refers to the "sentencing court" as the mechanism that must consider the alternative measures and as a last resort impose imprisonment as alternative punishment. By authorizing the officer exercising general court-martial jurisdiction over an accused to hold an indigency hearing and determine an accused's indigency status based on an accused's demonstrated reasons for non-payment, to consider alternative measures for confinement and to decide the penal interests of the Government, the President changed the traditional law that authorized an automatic effectuation of a fine enforcement provision into a discretionary post-sentencing judicial function. But, such judicial function is ordinarily the proper responsibility of the sentencing authority, Articles 18–20, UCMJ, 10 U.S.C. §§ 818–820; R.C.M. 201(f), or the convening authority at the time he takes his action, Article 60(a), UCMJ; R.C.M. 1107(e), and no other authority. Articles 18–20, 60(a), UCMJ; R.C.M. 201(f); *see contra United States v. Knabe* 10 M.J. 607 (AFCMR 1980). While he may exercise clemency or execute that portion of a sentence now ripe for execution, an officer exercising general court-martial jurisdiction over an accused cannot impose a sentence. When, pursuant to the alleged authority granted him, the officer exercising general court-martial jurisdiction over the accused, under R.C.M. 1113(d)(3), transforms the fine enforcement provision of an indigent accused's adjudged sentence to a fine into confinement, he does more than exercise clemency or execute a sentence ripe for execution. He imposes a sentence, particularly as it relates to confinement, a potentially more severe punishment, *see United States v. Estrada de Castillo,* 549 F.2d at 585; Legislative History, Criminal Fine Enforcement Act of 1984, 5 U.S.Code Congressional and Administrative News 5433, 5437; and most particularly in such situations since confinement is more severe than fines or forfeitures. *See Bearden v. Georgia; Williams v. Illinois;* "The Supreme Court, 1982 Term," 97 Harv.L.Rev. 86, 88 n. 13 (November 1983).[28] This would seem to hold for alternative measures as well, even though they are less severe punishment. *See Bearden.* If this is true, we believe he is without authority to do so.

Indeed, it would seem to follow that if the drafters did, in fact, fully rely on the *Bearden–Williams–Tate* trilogy to create R.C.M. 1113(d)(3), then it also follows that the transformation of a fine enforcement provision into punishment constitutes resentencing. If the transformation to confinement is resentencing, it is analogous to 18 U.S.C. § 3614. Such a holding could be further supported by the legislative history to 18 U.S.C. § 3565, which authorized federal judges prior to 1 November 1986 to impose committed fines, as amended by Pub.L. No. 98–596 (1984), wherein the Congress stated:

> To impose a committed fine, the judge must find by a preponderance of the information relied upon in determining sentence that the defendant has the *present ability to pay the fine.* (Emphasis added.)
>
> ... While 18 U.S.C. 3565 at present does not expressly limit a court's authori-

---

**28.** Common sense would also indicate that confinement is more serious than monetary punishments since confinement is used as the tool to enforce payment. If confinement were not more severe, it would not be an effective tool of enforcement.

ty to impose a committed fine, the Supreme Court has held that a person cannot be imprisoned for failure to pay a fine if that failure is due to the person's indigency. *See Williams v. Illinois*, 399 U.S. 235 [90 S.Ct. 2018, 26 L.Ed.2d 586] (1970); *Tate v. Short.* 401 U.S.C. [sic] 395 (1971). Thus, whenever a committed fine is ordered today, the judge, in effect is finding that the defendant is not indigent and can pay the fine.... [N]ew 18 U.S.C. 3565(a)(1) simply requires that the judge make this finding explicitly and thereby enforces a constitutional standard.

5 U.S.Code Congressional and Administrative News 5437 (1984). *See United States v. Miller*, 588 F.2d 1256, 1264 (9th Cir.1978) *(reh'g en banc* 1979).

We do not think such an interpretation is viable, however, because if resentencing were the intent, then R.C.M. 1113(d)(3) would have required a rehearing on sentencing and the paradox we have just identified and discussed would not have been present. Furthermore, the President could not have intended the officer exercising general court-martial jurisdiction over an accused at any particular time to resentence because he is not a sentencing authority. *See* Articles 18–20, UCMJ; R.C.M. 201(f). For that matter, and as we have noted, the Code is even silent about the officer exercising general court-martial jurisdiction having any authority to execute a fine enforcement provision for failure to pay.[29] Any such authority, if it exists, is based upon authority promulgated by the President in R.C.M. 1113(c), execution of sentences (after the convening authority's action). Arguably, R.C.M. 1113 could be considered presidential fine tuning of the broad statutory authorization (Article 56, UCMJ, 10 U.S.C. § 856) that gives the establishment of maximum punishment authorization to the President, including, under very limited circumstances, the authority to allow an authority other than a sentencing court to transform the contingent confinement authorized by the court-mar-

tial by its adjudged sentence to an equivalent confinement as punishment that the court-martial has specified. We are convinced, however, considering the absence of any military jurisprudence on this novel issue, and the fact that alternative measures (also punishment substitutes) are not presently considered by the sentencing court when determining a fine enforcement provision, that the President failed to recognize the resentencing concept he created when he implemented R.C.M. 1113(d)(3).

Upon further analysis, however, we are able to differentiate the resentencing concept of civilian judicial precedent as subsequently implemented by statute from the *resentencing-type* action contemplated by the military justice system. In the military justice system the sentencing court, the court-martial, really sets the maximum confinement for contumacious conduct (the debt not discharged by any confinement so served) and confinement as a punishment substitute for an indigent unable to pay an adjudged fine (the debt discharged by any confinement so transformed) depending upon the occurrence of a court-specified event, and due process of law, *i.e.*, non-payment of the adjudged fine as limited by R.C.M. 1113(d)(3). The contingent confinement for contumacious conduct is executed upon the occurrence of an accused's willful refusal to pay the fine adjudged even though he has the ability to do so. The contingent confinement for punishment purposes is executed as, or transformed into, punishment *only if* an accused's failure to pay is found to be the result of inability to pay the fine due to indigency and then, only after the officer exercising general court-martial jurisdiction: (1) determines that the accused did not make sufficient bona fide efforts to acquire the funds having been given the opportunity to do so, (2) considers alternative measures for confinement, and (3) determines that those measures are inadequate to meet the Government's penal interests in punishment and deterrence.

While this latter interpretation is conceptually contrary to the resentencing concept

---

**29.** We realize that sentences are normally the prerogative of the President, Article 56, UCMJ, but then suspensions and vacation proceedings relate to sentencing in much the same way that fine enforcement provisions and enforcement of collection of fines do.

of *Bearden* and its progeny, it permits the R.C.M. 1113(d)(3) provision to remain valid despite its resentencing nature and it can be justified as being consistent with the Code, Manual, and judicial precedent treating similar issues while acceding to the uniqueness of the military justice system. We accept such an interpretation for five reasons. First, unlike the civilian jurisdictions where the sentence adjudged by the sentencing court is for all practical purposes self-executing, the military justice system requires review, approval and execution of the sentence by an authority other than the sentencing court. The approval and execution of a court-martial sentence is completely discretionary with the authority who has the ultimate responsibility for executing the sentence, or any portion thereof, when legally permitted. Thus, execution of the fine enforcement provision either for contumacious conduct or as a transformation to punishment as a result of identifying a protected class of people, *i.e.,* indigents, falls logically within the parameters of such discretionary post-sentencing execution authority. Second, the officer exercising general court-martial jurisdiction over the accused at the time of the R.C.M. 1113(d)(3) must consider alternative measures that are less severe than confinement, and if he decides to confine, the amount of confinement he can execute is limited to that set by the court-martial. Third, such supplementary post-sentencing action is based upon proceedings providing minimal due process that become part of the record. Fourth, the post-sentencing action is reviewable for abuse of discretion. Finally, extraordinary measures are available to the accused should he be subjected to service of the additional confinement he believes contrary to law prior to completion of appellate review. *See Waller v. Swift,* 30 M.J. 139 (C.M.A.1990). Thus, we conclude that an officer exercising general court-martial jurisdiction over the accused at the time of the R.C.M. 1113(d)(3) proceedings can transform a fine enforcement provision into punishment pursuant to the requirements set forth in R.C.M. 1113(d)(3) and this decision.

## IV. Prospective Application

We note that since we find the action of the officer exercising general court-martial jurisdiction over an accused pursuant to the provisions of R.C.M. 1113(d)(3) reviewable for an abuse of discretion, the absence of specific guidelines for making such a decision makes review of such a decision extremely difficult. Accordingly, to facilitate the future appellate review of such actions, in all cases in which a fine enforcement provision is transformed into punishment, the officer exercising general court-martial jurisdiction over an accused who transforms a fine enforcement provision into the punishment of confinement should include in his action: (1) his findings of fact as to the accused's indigency status; (2) the opportunity had or given to the accused and the accused's efforts to acquire the funds to pay the fine; (3) the alternative measures considered; (4) and if those alternatives are inadequate to meet the penological interests of the Government in punishment and deterrence, a statement as to why they were inadequate. *See United States v. Brownd,* 6 M.J. 338 (C.M.A.1979). We also suggest that factors similar to those set forth in 18 U.S.C. §§ 3572 and 3614 be used as guides by the convening authority in determining initially the appropriateness of the fine and the fine enforcement provision and by the officer exercising general court-martial jurisdiction over the appellant at the time the fine enforcement provision is transformed into the punishment of confinement. It would also be beneficial to have the sentencing court-martial instructed to consider such factors when deliberating on the appropriate sentence. *United States v. Jones,* 28 M.J. 939, 940 (NMCMR 1989); *Vasquez v. Cooper,* 862 F.2d 250, 254–255 (10th Cir.1988).[30]

## V. Conclusion

We would ordinarily set aside the convening authority's supplementary action or-

30. Recent judicial interpretation of 18 U.S.C. § 3572 requires the sentencing court to make specific fact-findings on the listed factors in order to facilitate appellate review. *United*

*States v. Harvey,* 885 F.2d 181 (4th Cir.1989); *see United States v. Levy,* 865 F.2d 551, 560–561 (3d Cir.1989). In the absence of guidance specifically directed to enforcement of a fine in the

572

dering execution of the enforcement provision of the adjudged fine and remand the case to the Judge Advocate General for return to the officer exercising general court-martial jurisdiction over appellant to hold an R.C.M. 1113(d)(3) hearing and make determinations in accordance with this opinion. The fact that appellant has, in all likelihood, already served the sentence to confinement adjudged as well as the confinement executed as enforcement for the unpaid fine, however, causes us, in the interest of judicial economy, to invoke our fact-finding responsibility pursuant to Article 66(c), UCMJ, and apply the findings of fact we made previously to the law we have set forth herein. We have exercised, *supra*, that fact-finding responsibility by gleaning from the record and its allied papers facts upon which we can resolve the appropriateness of the sentence in appellant's case. *Cf. United States v. Hill*, 27 M.J. 293 (C.M.A.1988); *Edwards*, 20 M.J. at 440. We conclude that the appellant was unconstitutionally deprived of his liberty.

Accordingly, because the appellant has served 18 months additional confinement based on an unconstitutional application of R.C.M. 1113(d)(3) and an unlawful order of execution, he has been prejudiced. We will reassess the sentence. *See United States v. Sales*, 22 M.J. 305 (C.M.A.1986). We affirm the findings and, upon reassessment, we affirm only so much of the sentence approved on review below as provides for total forfeiture of pay and allowances and confinement for 6 months.[31]

Chief Judge BYRNE and Judge JONES concur.

---

military justice system, we have determined that it is proper for us to consider the federal procedures followed by federal judges until the President, the Congress, or our superior court set other guidelines. We do so based on the fact that Article 36, UCMJ, requires the President to establish procedures and rules of evidence as closely related to those practiced in federal district courts as practicable.

**31.** Appellant's liability for the fine was discharged upon the transformation of the fine enforcement provision to the punishment of confinement. Since no fine exists to reassess and since he has served the transformed punishment to confinement, we must make the reassessment meaningful.

